FILED
MAY 10 2024 JXM
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**1:24-cv-03823**
**Judge Rebecca R. Pallmeyer**
**Magistrate Judge Maria Valdez**
**DIRECT / CAT 3**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* [UNDER SEAL], | **Civil Action No. __________** |
| Plaintiff, | **Hon. __________________** |
| v. | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| [UNDER SEAL], | **JURY TRIAL DEMANDED** |
| Defendants. | **DO NOT PLACE ON PACER**<br>**DO NOT PLACE IN PRESS BOX** |

**RELATOR'S QUI TAM COMPLAINT**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AIDAN FORSYTH,<br><br>Plaintiff-Relator,<br><br>v.<br><br>LETTUCE ENTERTAIN YOU ENTERPRISES INC., 155 MARKET LLC, 159 LTD PARTNERSHIP, 321 RESTAURANT LLC, 441 CLARK RESTAURANT LLC, 59 WEST HUBBARD INC., BEATRIX OAK BROOK LLC, CLARK HUBBARD LLC, CLARK ILLINOIS LLC, CLARK LOFT LLC, DEARBORN HUBBARD LLC, EAT IN THE MALL TOO INC., HALSTED OYSTER LLC, JACKSON MARKET LLC, JOE'S OF DC LLC, JUST B' CLAWS INC., KINZIE STREET RESTAURANT LLC, LETTUCE CONSULTING GROUP LLC, M STREET KITCHEN LLC f/k/a LGO SANTA MONICA LLC, MON AMI BETHESDA LLC, MON AMI GABI OAKBROOK LLC, MON AMI RESTON LLC, NORTHBROOK SEAFOOD LLC, NWH BEATRIX LLC, OHIO STREET EVENTS LLC, OSTERIA WHEELING LLC, OVS LLC, PHASE ONE LLC, RAMEN FULTON MARKET LLC, RAMEN NMH LLC, RIVER NORTH ITALIAN LLC, ROCKVILLE RESTAURANT LLC, ROSEMONT VENTURES LLC, RPM DC LLC, SHAW'S SCHAUMBURG LLC, WHEELING BANQUETS LLC f/k/a STELLA SUNSET LLC, VEGAS TAPAS LLC, WILDFIRE EDEN PRAIRIE LLC, WILDFIRE SCHAUMBURG LLC, WILDFIRE TYSONS LLC, BBCE PIER LLC, HALSTED KITCHEN LLC, and PIZZOLI LLC,<br><br>Defendants. | **Civil Action No. ___________**<br><br>**Hon. ______________________**<br><br>**FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED**<br><br>**DO NOT PLACE ON PACER**<br>**DO NOT PLACE IN PRESS BOX** |

**RELATOR'S QUI TAM COMPLAINT**

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendants Lettuce Entertain You Enterprises, Inc. ("Lettuce"), 155 Market LLC ("155 Market"), 159 LTD Partnership ("159 LTD"), 321 Restaurant LLC ("321 Restaurant"), 441 Clark Restaurant LLC ("441 Clark), 59 West Hubbard Inc. ("59 West Hubbard"), Beatrix Oak Brook LLC ("Beatrix Oak Brook"), Clark Hubbard LLC ("Clark Hubbard"), Clark Illinois LLC ("Clark Illinois"), Clark Loft LLC ("Clark Loft"), Dearborn Hubbard LLC ("Dearborn Hubbard"), Eat In The Mall Too Inc. ("Eat In The Mall Too"), Halsted Oyster LLC ("Halsted Oyster"), Jackson Market LLC ("Jackson Market"), Joe's of DC LLC ("Joe's of DC"), Just B' Claws Inc. ("Just B' Claws"), Kinzie Street Restaurant LLC ("Kinzie Street"), Lettuce Consulting Group LLC ("Lettuce Consulting"), M Street Kitchen LLC f/k/a LGO Santa Monica LLC ("M Street Kitchen"), Mon Ami Bethesda LLC ("Mon Ami Bethesda"), Mon Ami Gabi Oakbrook LLC ("Mon Ami Gabi"), Mon Ami Reston LLC ("Mon Ami Reston"), Northbrook Seafood LLC ("Northbrook Seafood"), NWH Beatrix LLC ("NWH Beatrix"), Ohio Street Events LLC ("Ohio Street Events"), Osteria Wheeling LLC ("Osteria Wheeling"), OVS LLC ("OVS"), Phase One LLC ("Phase One"), Ramen Fulton Market LLC ("Ramen Fulton Market"), Ramen NMH LLC ("Ramen NMH"), River North Italian LLC ("River North Italian"), Rockville Restaurant LLC ("Rockville"), Rosemont Ventures LLC ("Rosemont"), RPM DC LLC ("RPM DC"), Shaw's Schaumburg LLC ("Shaw's"), Wheeling Banquets LLC f/k/a Stella Sunset LLC ("Wheeling Banquets"), Vegas Tapas LLC ("Vegas Tapas"), Wildfire Eden Prairie LLC ("Wildfire Eden"), Wildfire Schaumburg LLC ("Wildfire Schaumburg"), Wildfire Tysons LLC ("Wildfire Tysons"), BBCE Pier LLC ("BBCE"), Halsted

Kitchen LLC ("Halsted Kitchen"), and Pizzoli LLC ("Pizzoli") (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1. This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP"), and for forgiveness of those loans, in violation of the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (the "FCA").

2. Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan programs.

## SUMMARY OF ALLEGATIONS

3. Lettuce Entertain You Enterprises, Inc. was founded in 1971 by Richard Melman and the late Jerry A. Orzoff and today, Lettuce operates approximately 130 chain restaurants that include over 60 brands across Illinois, Minnesota, Maryland, Nevada, Virginia, Washington D.C., Texas, and Florida.

4. At all times relevant to this action, Defendant Lettuce was a Delaware corporation headquartered in Chicago, Illinois.

5. Richard Melman was the founder and chairman of Lettuce.

6. Jay Stieber was the Executive Vice President and General Counsel of Lettuce.

7. Steve Donohue was the CFO of Lettuce and had held this position since September 2020. As of the date of this filing, it is unknown who was the CFO prior to September 2020.



SHN\792478.1

8. Early in the PPP loan program, and expressly "to preserve the limited resources available to the PPP program," the SBA instituted a limitation for businesses that were part of a single corporate group, permitting them to receive no more than $20,000,000.00 of PPP loans in the aggregate. The SBA required any applicant or recipient of a PPP loan to withdraw or request cancellation of any pending application loan not in excess of the cap and warned that borrowers who failed to comply would be considered to have used loan proceeds for unauthorized purposes and such loans would not be forgiven. Early in 2021, the SBA placed a $4,000,000 cap on second-draw PPP loans to a single corporate group, likewise to "promote the availability of PPP loans to the largest possible number of borrowers[.]"

9. Forty-one corporate entities owned in whole or in part by Lettuce and/or Melman, or controlled by Lettuce and/or Melman (the "Lettuce Entities") received a total of $31,091,380.28 of forgiven first-draw PPP loans: 155 Market, 159 LTD, 321 Restaurant, 441 Clark, 59 West Hubbard, Beatrix Oak Brook, Clark Hubbard, Clark Illinois, Clark Loft, Dearborn Hubbard, Eat In The Mall Too, Halsted Oyster, Jackson Market, Joe's of DC, Just B' Claws, Kinzie Street, Lettuce Consulting, M Street Kitchen, Mon Ami Bethesda, Mon Ami Gabi, Mon Ami Reston, Northbrook Seafood, NWH Beatrix, Ohio Street Events, Osteria Wheeling, OVS, Phase One, Ramen Fulton Market, Ramen NMH, River North Italian, Rockville, Rosemont, RPM DC, Shaw's, Wheeling Banquets, Vegas Tapas, Wildfire Eden, Wildfire Schaumburg, Wildfire Tysons, BBCE, and Halsted Kitchen (collectively, "First-Draw Entities"). However, this amount exceeded the Small Business Administration ("SBA") $20 million loan limit for affiliated corporate entities by approximately $11,091,000.00.

10. Twenty Lettuce Entities received a total of $19,419,196.14 of forgiven second-draw PPP loans: 159 LTD, 59 West Hubbard, Beatrix Oak Brook, Clark Loft, Dearborn Hubbard,

Halsted Oyster, Jackson Market, Kinzie Street, M Street Kitchen, Mon Ami Bethesda, Mon Ami Reston, NWH Beatrix, Ramen NMH, Rockville, Rosemont, RPM DC, Shaw's, Vegas Tapas, Wildfire Tysons, and Pizzoli (collectively, "Second-Draw Entities") However, this amount exceeded the SBA $4 million limit for a single corporate group by approximately $15,419,000.00.

11. All First-Draw Entities received their first-draw loans through Wintrust Bank.

12. All Second-Draw Entities, except for Pizzoli, received their second-draw loans through Wintrust Bank. Pizzoli received its second-draw funding through J.P. Morgan Chase Bank.

13. The First-Draw Entities applied for their first-draw loans in or around June 2020 through March 2021, well after the April 30, 2020, effective date for the SBA's $20 million loan limit.

14. The Second-Draw Entities applied for their second-draw loans in or around January 2021 through March 2021, well after the January 12, 2021, effective date for the SBA's $4 million loan limit.

15. The applications required the applicants' designated representatives to certify that the businesses were eligible borrowers under SBA rules. The applications also required the representatives to acknowledge that the information submitted was material to the Government, to certify that it was true and correct, and to acknowledge that submitting a materially false application would violate Federal law.

16. In an effort to circumvent the $20 million and $4 million corporate group caps, the First-Draw Entities' and the Second-Draw Entities' representatives falsely and fraudulently certified that the businesses were eligible borrowers under SBA rules, including that each one had

no (or a limited number of) affiliated businesses. They also expressly acknowledged that this was a material question, and that submitting a materially false application would violate federal law.

17. In reliance upon the First-Draw Entities' and the Second-Draw Entities' false statements and certifications, the banks extended PPP loans to them in an amount totaling over $50 million.

18. In or around September 2021 through February 2022, the First-Draw Entities obtained forgiveness of their first-draw PPP loans.

19. In or about February and March 2022, the Second-Draw Entities obtained forgiveness of their second-draw PPP loans.

20. The PPP Loan Forgiveness Application Form required the applicant's representative to certify that the borrower had complied with all requirements in the PPP Rules provided under the Small Business Act, the PPP interim final rules, and guidance issued by SBA through the date of the forgiveness application. The application also required the representative to certify that all information provided was "true and correct in all material respects" and to acknowledge that "knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan" was punishable under Federal law with imprisonment and/or fines.

21. Upon information and belief, the First-Draw Entities' and the Second-Draw Entities' representatives falsely and fraudulently certified that the businesses had all complied with the SBA's PPP loan requirements and were therefore entitled to loan forgiveness.

22. Had Defendants been truthful in their statements and certifications to the banks, *i.e.* that the First-Draw Entities and the Second-Draw Entities were owned and operated by Lettuce, that the First-Draw Entities' loans had exceeded the SBA's $20 million limit, and that the Second-

Draw Entities' loans had exceeded the $4 million limit, the excessive loans never would have been issued.

23. Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed loans that were issued to Defendants, and later forgiven, as the intended result of their wrongdoing, as well as to recover treble damages and/or penalties.

**JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS**

24. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by or on behalf of the United States of America.

25. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants do business, have principal places of business and/or submitted false and fraudulent PPP loan applications and/or requests for loan forgiveness from this District.

26. Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

27. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days, and shall not be served on the Defendants until the Court so orders.

28. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material

information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable Morris Pasqual, United States Attorney for the Northern District of Illinois, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

29. Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES

30. At all times relevant to this action, Plaintiff/Relator Aidan Forsyth resided at 55 West 8th Street, New York, NY 10011.

31. At all times relevant to this action, Defendant Lettuce Entertain You Enterprises, LLC was a limited liability company that was incorporated in the State of Delaware on or about November 30, 1977. Its principal place of business was located at 5419 North Sheridan Road, Suite 116 Chicago, IL 60640. Lettuce was in the restaurant business, and as of the date of this filing, Lettuce employs more than 7,500 people. *See* Lettuce Entertain You Restaurants, *Partners* (last visited March 18, 2024), https://www.lettuce.com/about-us/partners/.

32. Defendant 155 Market LLC was a limited liability company that was incorporated in the State of Illinois on or about May 1, 2017. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

33. Defendant 159 LTD Partnership was a partnership. The state and date of incorporation are unknown. Its principal place of business was located at 5419 North Sheridan Road, Suite 108 Chicago, IL 60640.

34. Defendant 321 Restaurant LLC was a limited liability company that was incorporated in the State of Illinois on or about November 21, 2017. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

35. Defendant 441 Clark Restaurant LLC was a limited liability company that was incorporated in the State of Illinois on or about February 8, 2018. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

36. Defendant 59 West Hubbard Inc. was a corporation that was incorporated in the State of Illinois on or about September 29, 1994. Its principal place of business was located at 5419 North Sheridan Road, Suite 116 Chicago, IL 60640.

37. Defendant Beatrix Oak Brook LLC was a limited liability company that was incorporated in the State of Illinois on or about July 3, 2018. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

38. Defendant Clark Hubbard LLC was a limited liability company that was incorporated in the State of Illinois on or about September 12, 2011. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

39. Defendant Clark Illinois LLC was a limited liability company that was incorporated in the State of Illinois on or about November 23, 2015. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

40. Defendant Clark Loft LLC was a limited liability company that was incorporated in the State of Illinois on or about November 16, 2012. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

41. Defendant Dearborn Hubbard LLC was a limited liability company that was incorporated in the State of Illinois on or about November 18, 2004. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

42. Defendant Eat In The Mall Too Inc. was a corporation that was incorporated in the State of Illinois on or about October 15, 1992. Its principal place of business was located at 5419 North Sheridan Road, Suite 116 Chicago, IL 60640.

43. Defendant Halsted Oyster LLC was a limited liability company that was incorporated in the State of Illinois on or about May 1, 2015. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

44. Defendant Jackson Market LLC was a limited liability company that was incorporated in the State of Illinois on or about November 22, 2017. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

45. Defendant Joe's of DC LLC was a limited liability company that was incorporated in the District of Columbia on or about December 28, 2012. Its principal place of business was located at 5419 North Sheridan Road, Suite 116 Chicago, IL 60640.

46. Defendant Just B' Claws Inc. was a limited liability company that was incorporated in the State of Illinois on or about February 1, 1984. Its principal place of business was located at 5419 North Sheridan Road, Suite 116 Chicago, IL 60640.

47. Defendant Kinzie Street Restaurant LLC was a limited liability company that was incorporated in the State of Illinois on or about October 28, 2011. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

48. Defendant Lettuce Consulting Group LLC was a limited liability company that was incorporated in the State of Illinois on or about May 5, 2000. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

49. Defendant M Street Kitchen LLC, formerly known as LGO Santa Monica LLC, was a limited liability company that was incorporated in the State of Arizona on or about January 7, 2008. Its principal place of business was located at 3800 N Central Avenue, Suite 460 Phoenix, AZ 85012.

50. Defendant Mon Ami Bethesda LLC was a limited liability company that was incorporated in the State of Maryland on or about July 10, 2001. Its principal place of business was located at 7229 Woodmont Avenue Bethesda, MD 21093.

51. Defendant Mon Ami Gabi Oakbrook LLC was a limited liability company that was incorporated in the State of Illinois on or about March 27, 2000. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

52. Defendant Mon Ami Reston LLC was a limited liability company that was incorporated in the State of Virginia on or about July 21, 2006. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

53. Defendant Northbrook Seafood LLC was a limited liability company that was incorporated in the State of Illinois on or about September 8, 1997. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

54. Defendant NWH Beatrix LLC was a limited liability company that was incorporated in the State of Illinois on or about July 29, 2013. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

55. Defendant Ohio Street Events LLC was a limited liability company that was incorporated in the State of Illinois on or about November 3, 2014. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

56. Defendant Osteria Wheeling LLC was a limited liability company that was incorporated in the State of Illinois on or about January 27, 2009. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

57. Defendant OVS LLC was a limited liability company that was incorporated in the State of Illinois on or about November 12, 2004. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

58. Defendant Phase One LLC was a limited liability company that was incorporated in the State of Illinois on or about May 29, 1998. Its principal place of business was located at 676 N Street Clair, IL 60611.

59. Defendant Ramen Fulton Market LLC was a limited liability company that was incorporated in the State of Illinois on or about July 24, 2017. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

60. Defendant Ramen NMH LLC was a limited liability company that was incorporated in the State of Illinois on or about April 20, 2018. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

61. Defendant River North Italian LLC was a limited liability company that was incorporated in the State of Illinois on or about July 11, 2011. Its principal place of business was located at 5419 North Sheridan Road, Suite 108 Chicago, IL 60640.

62. Defendant Rockville Restaurant LLC was a limited liability company that was incorporated in the State of Maryland on or about February 19, 2013. Its principal place of business was located at 11810 Rockville Pike Rockville, MD 20852.

63. Defendant Rosemont Ventures LLC was a limited liability company that was incorporated in the State of Illinois on or about August 12, 2015. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

64. Defendant RPM DC LLC was a limited liability company that was incorporated in the District of Columbia on or about October 16, 2013. Its principal place of business was located at 5419 North Sheridan Road, Suite 116 Chicago, IL 60640.

65. Defendant Shaw's Schaumburg LLC was a limited liability company that was incorporated in the State of Illinois on or about December 2, 1998. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

66. Defendant Wheeling Banquets LLC, formerly known as Stella Sunset LLC, was a limited liability company that was incorporated in the State of Illinois on or about November 30, 2012. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

67. Defendant Vegas Tapas LLC was a limited liability company that was incorporated in the State of Nevada on or about March 25, 2003. Its principal place of business was located at 5419 North Sheridan Road, Suite 116 Chicago, IL 60640.

68. Defendant Wildfire Eden Prairie LLC was a limited liability company that was incorporated in the State of Minnesota on or about November 2, 2000. Its principal place of business was located at 5419 North Sheridan Road, Suite 116 Chicago, IL 60640.

69. Defendant Wildfire Schaumburg LLC was a limited liability company that was incorporated in the State of Illinois on or about March 6, 2002. Its principal place of business was located at 5419 North Sheridan Road, Suite 108 Chicago, IL 60640.

70. Defendant Wildfire Tysons LLC was a limited liability company that was incorporated in the State of Virginia on or about November 19, 2004. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

71. Defendant BBCE Pier LLC was a subchapter S corporation that was incorporated in the State of Illinois on or about March 15, 2011. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

72. Defendant Halsted Kitchen LLC was a limited liability company that was incorporated in the State of Illinois on or about June 8, 2012. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

73. Defendant Pizzoli LLC was a limited liability company that was incorporated in the State of Illinois on or about February 18, 1999. Its principal place of business was located at 5419 North Sheridan Road Chicago, IL 60640.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

74. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

75. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $13,946.00 and up to $27,894.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024).

76. The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

77. The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other

recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

78. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

79. In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

80. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

81. Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the

PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

82. Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

83. Early in the PPP loan program, and expressly "to preserve the limited resources available to the PPP program," the SBA instituted a limitation for businesses that were part of a single corporate group, permitting them to receive no more than $20,000,000.00 of PPP loans in the aggregate. The limitation defined businesses that were part of a "single corporate group" as those that were "majority owned, directly or indirectly, by a common parent." The limitation was effective for any loan that had not been fully disbursed as of April 30, 2020. *See* 85 Fed. Reg. 26324, 26325 (May 4, 2020).

84. The SBA specified that "[i]t is the responsibility of an applicant for a PPP loan to notify the lender if the applicant has applied for or received PP loans in excess of the amount permitted by this interim final rule and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule." *Id.* The SBA warned that "[f]ailure by the applicant to do so will be regarded as a use of PPP loans for unauthorized purposes, and the loan will be not eligible for forgiveness." *Id.*

85. The SBA also instituted another limitation for businesses that were a part of a single corporate group, permitting them to receive no more than $4,000,000 of second-draw PPP loans in the aggregate. Similar to the first-draw loan cap, the SBA imposed this limitation to "promote the availability of PPP loans to the largest possible number of borrowers[.]" The limitation defined

businesses that were part of a "single corporate group" as those that were "majority owned, directly or indirectly, by a common parent." The limitation was effective for any loan that had not been fully disbursed as of January 12, 2021. *See* 86 Fed. Reg. 3712, 3715-16 (January 14, 2021).

86. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

87. The borrower's authorized representative was required to certify, among other things, the business's average monthly payroll expenses and number of employees. This information was used to calculate the amount of money the business was eligible to be loaned. The applicant also had to submit documentation showing payroll expenses, among other things.

88. All versions of the PPP loan application required the authorized representative to certify that the applicant had not and would not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the SBA, not including the PPP second draw loans.

89. All versions of the application further required the applicant's representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

90. PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the

total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

91. Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

92. A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

93. In December 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. 116-260) extended and further funded the PPP loan program, and the SBA issued implementing rules. Among other things, if a first-draw loan borrower fully repaid the loan prior to December 27, 2020, and the loan had not been forgiven, the borrower could reapply for a second first-draw loan pursuant to the rules then applicable. *See* SBA Procedural Notice, Control No. 5000-20076 (Jan. 13, 2021). "The reapplication procedure depends on whether the Lender reported the loan to SBA as 'cancelled' or 'paid in full' as a result of the borrower's repayment before December 27, 2020." *Id.* at 3.

**SPECIFIC FRAUD ALLEGATIONS**

94. In the aggregate, the total value of PPP loans received by the Lettuce Entities well exceeded the SBA's $20 million first-draw loan cap as well as the SBA's $4 million second-draw loan cap.

95. Lettuce, including each of the 41 First-Draw Entities and each of the 20 Second-Draw Entities that applied for loans, were owned in whole or in part and/or controlled by Mr. Melman, making all the Lettuce Entities members of a "single corporate group" that was limited in the aggregate by the $20 million cap as of April 30, 2020, as well as the $4 million cap as of January 12, 2021.

96. Further demonstrating that the First-Draw and Second-Draw Entities were members of a "single corporate group," Lettuce's Employee Savings Plan reported having 3616 active participants at the end of 2020. This closely tracks the 3,742 jobs reported for the First-Draw Entities' first-draw PPP loan applications.

97. Also, many of the Lettuce entities were required to disclose ownership interest percentages when they applied for their liquor licenses.

98. Lettuce and/or Mr. Melman held an ownership interest in many of these entities, showing that they were commonly owned and/or controlled or were affiliated with one another.

99. Moreover, SBA records indicate that many First-Draw Entities' initial first-draw PPP loans were repaid, cancelled or not issued.

100. In particular, loans 6604487704 (155 Market), 3046067207 (321 Restaurant), 7613487003 (441 Clark), 5212977705 (59 West Hubbard), 7604827007 (Beatrix Oak Brook), 1991737202 (Clark Hubbard), 5742647708 (Clark Illinois), 8790677007 (Clark Loft), 1920507206 (Dearborn Hubbard), 6541967708 (Eat In The Mall Too), 7614297007 (Halsted

Oyster), 8715297000 (Just B' Claws), 5445817704 (Jackson Market), 7749807002 (Kinzie Street), 7515197006 (M Street Kitchen), 6110457706 (Mon Ami Bethesda), 7966117003 (Mon Ami Reston), 1039057207 (Northbrook Seafood), 8794037000 (NWH Beatrix), 9553637105 (Ohio Street), 6047157706 (Osteria Wheeling), 6517967109 (OVS), 7535417008 (Ramen Fulton), 6393607103 (Ramen NMH), 8704207000 (River North Italian), 1912897207 (Shaw's), 7508977006 (Vegas Tapas), 7921427009 (Rosemont), 8126177001 (Rockville), 2129097206 (Wildfire Eden), 7499067001 (Wildfire Schaumburg), 8102387000 (Wildfire Tysons) were all issued in April and early May 2020.

101. SBA records indicate that Eat In The Mall Too's loan 1382558404 ("Eat In The Mall Too Loan 8404") was both issued and cancelled on February 1, 2021.

102. SBA records reflect that on or about May 5-7, 2020, about one week before the May 18, 2020 safe harbor deadline, all of these loans, except Eat In The Mall Too Loan 8404, were canceled.

103. Upon information and belief, the Lettuce entities withdrew or canceled their loan applications or (in most cases) repaid their issued loans in order to circumvent the SBA caps.

104. Primarily in or about June 2020 and February 2021, the First-Draw Entities re-applied for and received second first-draw PPP loans.

105. The First-Draw Entities, through false and fraudulent applications, thus intentionally circumvented the $20 million limit and received a total of $31,091,380.28 in forgiven first-draw PPP loans, a portion of which proceeds were received after the April 30, 2020 effective date.

106. Similarly, the Second-Draw Entities, through false and fraudulent applications, intentionally circumvented the $4 million limit and received $19,419,196.14 in forgiven second-draw PPP loans, a portion of which proceeds were received after the January 12, 2021.

107. As of the date of this filing, only one of the Second-Draw Entities' second-draw PPP loans was repaid and not forgiven.

108. This loan (loan # 4378978500) was made to Shaw's and marked with status "paid in full" in the SBA database. According to SBA guidelines, loans are marked with status "paid in full" if they have either been forgiven by SBA or repaid by the borrower. There is no public record of any dispute with Overseas Housing Allowance ("OHA") or SBA.[1]

**FIRST-DRAW PPP LOANS**

**To Circumvent the $20 Million Cap, 155 Market Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

109. On or about May 3, 2020, 155 Market received a first-draw PPP loan, loan # 6604487704 (the "155 Market Loan 7704") from a bank in the amount of $182,186.00.

110. On or about May 7, 2020, 155 Market Loan 7704 was reported cancelled. Upon information and belief, 155 Market had repaid its loan in order to circumvent the SBA's $20 million loan cap.

[1] US Small Business Association, *PPP Data Dictionary* (last visited March 18, 2024), https://data.sba.gov/en/dataset/ppp-foia/resource/aab8e9f9-36d1-42e1-b3ba-e59c79f1d7f0 ("Loan Status is replaced by 'Exemption 4' when the loan is disbursed but not Paid in Full or Charged Off"); US Small Business Association, *SBA Procedural Notice*, (July 13, 2020), https://www.sba.gov/sites/sbagov/files/2021-03/5000-20036-508.pdf ("After a PPP forgiveness purchase, if no loan balance remains, Lender must report the PPP loan as paid in full on the next SBA Form 1502 report.")

111. In or before February 2021, an authorized representative of 155 Market prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of 155 Market to Wintrust Bank.

112. Upon information and belief, an authorized representative of 155 Market prepared SBA Form 2483, in which the representative falsely and fraudulently certified that 155 Market was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that 155 Market and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

113. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

114. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

115. Upon information and belief, 155 Market repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

116. Upon information and belief, an authorized representative of 155 Market falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material

respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

117. In or before February 2021, an authorized representative submitted or caused to be submitted 155 Market's second first-draw PPP loan application to Wintrust Bank.

118. On or about February 25, 2021, in reliance on 155 Market's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 4039338502 to 155 Market in the amount of $182,186.00 (the "155 Market Loan 8502").

119. On or about December 20, 2021, the 155 Market Loan 8502 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $183,623.25.

**To Circumvent the $20 Million Cap, 159 LTD Applies for and Receives a First-Draw PPP Loan, which is Later Forgiven**

120. In or before June 2020, an authorized representative of 159 LTD prepared or caused to be prepared an SBA application for first-draw PPP loan (SBA Form 2483) on behalf of 159 LTD to Wintrust Bank.

121. Upon information and belief, an authorized representative of 159 LTD prepared SBA Form 2483, in which the representative falsely and fraudulently certified that 159 LTD was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that 159 LTD and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

122. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

123. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

124. Upon information and belief, 159 LTD repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

125. Upon information and belief, an authorized representative of 159 LTD falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

126. In or around June 2020, an authorized representative submitted or caused to be submitted 159 LTD's first-draw PPP loan application to Wintrust Bank.

127. On or about June 16, 2020, in reliance on 159 LTD's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued first-draw PPP loan # 6979837905 (the "159 LTD Loan 7905") to 159 LTD in the amount of $696,899.00.

128. On or about September 16, 2021, the 159 LTD Loan 7905 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $705,552.16.

**To Circumvent the $20 Million Cap,**
**321 Restaurant Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

129. On or about April 16, 2020, 321 Restaurant received a first-draw PPP loan, loan # 3046067207 (the "321 Restaurant Loan 7207"), from a bank in the amount of $748,387.00.

130. On or about May 6, 2020, the 321 Restaurant Loan 7207 was reported cancelled. Upon information and belief, 321 Restaurant had repaid its loan in order to circumvent the SBA's $20 million loan cap.

131. In or before June 2020, an authorized representative of 321 Restaurant prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of 321 Restaurant to Wintrust Bank.

132. Upon information and belief, an authorized representative of 321 Restaurant prepared SBA Form 2483, in which the representative falsely and fraudulently certified that 321 Restaurant was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that 321 Restaurant and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

133. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

134. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

135. Upon information and belief, 321 Restaurant repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

136. Upon information and belief, an authorized representative of 321 Restaurant falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

137. In or before June 2020, an authorized representative submitted or caused to be submitted 321 Restaurant's second first-draw PPP loan application to Wintrust Bank.

138. On or about June 16, 2020, in reliance on 321 Restaurant's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6531237904 to 321 Restaurant in the amount of $748,386.00 (the "321 Restaurant Loan 7904").

139. On or about October 15, 2021, 321 Restaurant Loan 7904 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $748,281.33.

**To Circumvent the $20 Million Cap,**
**441 Clark Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

140. On or about April 8, 2020, 441 Clark received a first-draw PPP loan, loan # 7613487003 (the "441 Clark Loan 7003") from a bank in the amount of $198,942.00.

141. On or about May 5, 2020, the 441 Clark Loan 7003 was reported cancelled. Upon information and belief, 441 Clark had repaid its loan in order to circumvent the SBA's $20 million loan cap.

142. In or before June 2020, an authorized representative of 441 Clark prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of 441 Clark to Wintrust Bank.

143. Upon information and belief, an authorized representative of 441 Clark prepared SBA Form 2483, in which the representative falsely and fraudulently certified that 441 Clark was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that 441 Clark and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

144. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

145. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

146. Upon information and belief, 441 Clark repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

147. Upon information and belief, an authorized representative of 441 Clark falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

148. In or before June 2020, an authorized representative submitted or caused to be submitted 441 Clark's second first-draw PPP loan application to Wintrust Bank.

149. On or about June 16, 2020, in reliance on 441 Clark's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6839667900 to 441 Clark in the amount of $198,943.00 (the "441 Clark Loan 7900").

150. On or about October 15, 2021, the 441 Clark Loan 7900 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $174,361.22.

**<u>To Circumvent the $20 Million Cap, 59 West Hubbard Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven</u>**

151. On or about May 3, 2020, 59 West Hubbard received a first-draw PPP loan, loan # 5212977705 (the "59 West Hubbard Loan 7705"), from a bank in the amount of $1,247,680.00.

152. On or about May 7, 2020, the 59 West Hubbard Loan 7705 was reported cancelled. Upon information and belief, 59 West Hubbard had repaid its loan in order to circumvent the SBA's $20 million loan cap.

153. In or before June 2020, an authorized representative of 59 West Hubbard prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of 59 West Hubbard to Wintrust Bank.

154. Upon information and belief, an authorized representative of 59 West Hubbard prepared SBA Form 2483, in which the representative falsely and fraudulently certified that 59 West Hubbard was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that the other 59 West Hubbard and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

155. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

156. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

157. Upon information and belief, 59 West Hubbard repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

158. Upon information and belief, an authorized representative of 59 West Hubbard falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

159. In or before June 2020, an authorized representative submitted or caused to be submitted 59 West Hubbard's second first-draw PPP loan application to Wintrust Bank.

160. On or about June 16, 2020, in reliance on 59 West Hubbard's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6752627907 to 59 West Hubbard in the amount of $1,247,680.00 (the "59 West Hubbard Loan 7907").

161. On or about September 16, 2021, the 59 West Hubbard Loan 7907 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,263,172.03.

**To Circumvent the $20 Million Cap, Beatrix Oak Brook Applies for and Receives a First-Draw PPP Loan, which is Later Forgiven**

162. On or about April 8, 2020, Beatrix Oak Brook received a first-draw PPP loan, loan # 7604827007 (the "Beatrix Oak Brook Loan 7007"), from a bank in the amount of $582,400.00.

163. On or about May 5, 2020, the Beatrix Oak Brook Loan 7007 was reported cancelled. Upon information and belief, Beatrix Oak Brook had repaid its loan in order to circumvent the SBA's $20 million loan cap.

164. In or before June 2020, an authorized representative of Beatrix Oak Brook prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Beatrix Oak Brook to Wintrust Bank.

165. Upon information and belief, an authorized representative of Beatrix Oak Brook prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Beatrix Oak Brook was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Beatrix Oak Brook and the other Lettuce Entities (including

Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

166. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

167. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

168. Upon information and belief, Beatrix Oak Brook repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

169. Upon information and belief, an authorized representative of Beatrix Oak Brook falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

170. In or before June 2020, an authorized representative submitted or caused to be submitted Beatrix Oak Brook's second first-draw PPP loan application to Wintrust Bank.

171. On or about June 16, 2020, in reliance on Beatrix Oak Brook's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP

loan # 6803207900 to Beatrix Oak Brook in the amount of $582,397.00 (the "Beatrix Oak Brook Loan 7900").

172. On or about October 15, 2021, the Beatrix Oak Brook Loan 7900 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $590,097.58.

**To Circumvent the $20 Million Cap, Clark Hubbard Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

173. On or about April 16, 2020, Clark Hubbard received a first-draw PPP loan, loan #1991737202 (the "Clark Hubbard Loan 7202"), from a bank in the amount of $831,222.00.

174. On or about May 6, 2020, the Clark Hubbard Loan 7202 was reported cancelled. Upon information and belief, Clark Hubbard had repaid its loan in order to circumvent the SBA's $20 million loan cap.

175. In or before February 2021, an authorized representative of Clark Hubbard prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Clark Hubbard to Wintrust Bank.

176. Upon information and belief, an authorized representative of Clark Hubbard prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Clark Hubbard was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Clark Hubbard and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

177. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an

owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

178. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

179. Upon information and belief, Clark Hubbard repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

180. Upon information and belief, an authorized representative of Clark Hubbard falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

181. In or before February 2021, an authorized representative submitted or caused to be submitted Clark Hubbard's second first-draw PPP loan application to Wintrust Bank.

182. On or about February 25, 2021, in reliance on Clark Hubbard's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 4050918500 to Clark Hubbard in the amount of $831,224.00 (the "Clark Hubbard Loan 8500").

183. On or about January 6, 2022, the Clark Hubbard Loan 8500 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $838,220.14.

**To Circumvent the $20 Million Cap,**
**Clark Illinois Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

184. On or about May 3, 2020, Clark Illinois received a first-draw PPP loan, loan # 5742647708 (the "Clark Illinois Loan 7708"), from a bank in the amount of $877,322.00.

185. On or about May 7, 2020, the Clark Illinois Loan 7708 was reported cancelled. Upon information and belief, Clark Illinois had repaid its loan in order to circumvent the SBA's $20 million loan cap.

186. In or before February 2021, an authorized representative of Clark Illinois prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Clark Illinois to Wintrust Bank.

187. Upon information and belief, an authorized representative of Clark Illinois prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Clark Illinois was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Clark Illinois and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

188. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

189. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

190. Upon information and belief, Clark Illinois repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

191. Upon information and belief, an authorized representative of Clark Illinois falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

192. In or before February 2021, an authorized representative submitted or caused to be submitted Clark Illinois' second first-draw PPP loan application to Wintrust Bank.

193. On or about February 25, 2021, in reliance on Clark Illinois' materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 4356898510 to Clark Illinois in the amount of $877,324.00 (the "Clark Illinois Loan 8510").

194. On or about January 21, 2022, the Clark Illinois Loan 8510 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $885,073.70.

**To Circumvent the $20 Million Cap, Clark Loft Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

195. On or about April 9, 2020, Clark Loft received a first-draw PPP loan, loan # 8790677007 (the "Clark Loft Loan 7007"), from a bank in the amount of $939,000.00.

196. On or about May 5, 2020, the Clark Loft Loan 7007 was reported cancelled. Upon information and belief, Clark Loft had repaid its loan in order to circumvent the SBA's $20 million loan cap.

197. In or before June 2020, an authorized representative of Clark Loft prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Clark Loft to Wintrust Bank.

198. Upon information and belief, an authorized representative of Clark Loft prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Clark Loft was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Clark Loft and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

199. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

200. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that



SHN\792478.1

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

201. Upon information and belief, Clark Loft repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

202. Upon information and belief, an authorized representative of Clark Loft falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

203. In or before June 2020, an authorized representative submitted or caused to be submitted Clark Loft's second first-draw PPP loan application to Wintrust Bank.

204. On or about June 16, 2020, in reliance on Clark Loft's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6564577908 to Clark Loft in the amount of $938,998.00 (the "Clark Loft Loan 7908").

205. On or about September 16, 2021, the Clark Loft Loan 7908 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $950,657.23.

**To Circumvent the $20 Million Cap,**
**Dearborn Hubbard Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

206. On or about April 16, 2020, Dearborn Hubbard received a first-draw PPP loan, loan # 1920507206 (the "Dearborn Hubbard Loan 7206") from a bank in the amount of $867,858.00.



SHN\792478.1

207. On or about May 6, 2020, the Dearborn Hubbard Loan 7206 was reported cancelled. Upon information and belief, Dearborn Hubbard had repaid its loan in order to circumvent the SBA's $20 million loan cap.

208. In or before June 2020, an authorized representative of Dearborn Hubbard prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Dearborn Hubbard to Wintrust Bank.

209. Upon information and belief, an authorized representative of Dearborn Hubbard prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Dearborn Hubbard was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Dearborn Hubbard and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

210. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

211. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

212. Upon information and belief, Dearborn Hubbard repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

213. Upon information and belief, an authorized representative of Dearborn Hubbard falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

214. In or before June 2020, an authorized representative submitted or caused to be submitted Dearborn Hubbard's second first-draw PPP loan application to Wintrust Bank.

215. On or about June 16, 2020, in reliance on Dearborn Hubbard's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6983037904 to Dearborn Hubbard in the amount of $867,858.00 (the "Dearborn Hubbard Loan 7904").

216. On or about October 28, 2021, the Dearborn Hubbard Loan 7904 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $879,646.40.

**To Circumvent the $20 Million Cap, Eat In The Mall Too Applies for and Receives a Third First-Draw PPP Loan, which is Later Forgiven**

217. On or about May 3, 2020, Eat In The Mall Too received a first-draw PPP loan, loan # 6541967708 (the "Eat In The Mall Too Loan 7708"), from a bank in the amount of $593,279.00.

218. On or about May 7, 2020, the Eat In The Mall Too Loan 7708 was reported cancelled. Upon information and belief, Eat In The Mall Too had repaid its loan in order to circumvent the SBA's $20 million loan cap.

219. On or about February 1, 2021, Eat In The Mall Too received another first-draw PPP loan, loan # 1382558404 (the Eat In The Mall Too Loan 8404"), from a bank in the amount of $593,279.00.

220. On or about February 1, 2021, the Eat In The Mall Too Loan 8404 was reported cancelled. Upon information and belief, Eat In The Mall Too had repaid its loan in order to circumvent the SBA's $20 million loan cap.

221. In or before February 2021, an authorized representative of Eat In The Mall Too prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Eat In The Mall Too to Wintrust Bank.

222. Upon information and belief, an authorized representative of Eat In The Mall Too prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Eat In The Mall Too was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Eat In The Mall Too and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

223. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

224. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

225. Upon information and belief, Eat In The Mall Too repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

226. Upon information and belief, an authorized representative of Eat In The Mall Too falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

227. In or before February 2021, an authorized representative submitted or caused to be submitted Eat In The Mall Too's second first-draw PPP loan application to Wintrust Bank.

228. On or about February 25, 2021, in reliance on Eat In The Mall Too's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 4409838508 to Eat In The Mall Too in the amount of $593,279.00 (the "Eat In The Mall Too Loan 8508").

229. On or about January 21, 2022, the Eat In The Mall Too Loan 8508 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $598,519.63.

**To Circumvent the $20 Million Cap,**
**Halsted Oyster Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

230. On or about April 8, 2020, Halsted Oyster received a first-draw PPP loan, loan # 7614297007 (the "Halsted Oyster Loan 7007"), from a bank in the amount of $437,700.00.

231. On or about May 5, 2020, the Halsted Oyster Loan 7007 was reported cancelled. Upon information and belief, Halsted Oyster had repaid its loan in order to circumvent the SBA's $20 million loan cap.

232. In or before June 2020, an authorized representative of Halsted Oyster prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Halsted Oyster to Wintrust Bank.

233. Upon information and belief, an authorized representative of Halsted Oyster prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Halsted Oyster was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Halsted Oyster and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

234. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

235. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

236. Upon information and belief, Halsted Oyster repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

237. Upon information and belief, an authorized representative of Halsted Oyster falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

238. In or before June 2020, an authorized representative submitted or caused to be submitted Halsted Oyster's second first-draw PPP loan application to Wintrust Bank.

239. On or about June 16, 2020, in reliance on Halsted Oyster's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6822407907 to Halsted Oyster in the amount of $437,663.00 (the "Halsted Oyster Loan 7907").

240. On or about September 23, 2021, the Halsted Oyster Loan was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $443,182.42.

**To Circumvent the $20 Million Cap,**
**Jackson Market Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

241. On or about May 3, 2020, Jackson Market received a first-draw PPP loan, loan # 5445817704 (the "Jackson Market Loan 7704"), from a bank in the amount of $178,858.00.

242. On or about May 7, 2020, the Jackson Market Loan 7704 was reported cancelled. Upon information and belief, Jackson Market had repaid its loan in order to circumvent the SBA's $20 million loan cap.

243. In or before June 2020, an authorized representative of Jackson Market prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Jackson Market to Wintrust Bank.

244. Upon information and belief, an authorized representative of Jackson Market prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Jackson Market was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Jackson Market and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

245. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

246. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

247. Upon information and belief, Jackson Market repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

248. Upon information and belief, an authorized representative of Jackson Market falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

249. In or before June 2020, an authorized representative submitted or caused to be submitted Jackson Market's second first-draw PPP loan application to Wintrust Bank.

250. On or about June 16, 2020, in reliance on Jackson Market's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6748807910 to Jackson Market in the amount of $178,859.00 (the "Jackson Market Loan 7910").

251. On or about October 6, 2021, the Jackson Market Loan 7910 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $181,179.20.

**To Circumvent the $20 Million Cap,**
**Joe's of DC Applies for and Receives a**
**First-Draw PPP Loan, which is Later Forgiven**

252. In or before June 2020, an authorized representative of Joe's of DC prepared or caused to be prepared an SBA application for first-draw PPP loan (SBA Form 2483) on behalf of Joe's of DC to Wintrust Bank.

253. Upon information and belief, an authorized representative of Joe's of DC prepared SBA Form 2483, in which the representative falsely and fraudulently certified Joe's of DC was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Joe's of DC and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

254. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

255. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

256. Upon information and belief, Joe's of DC repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

257. Upon information and belief, an authorized representative of Joe's of DC falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

258. In or around June 2020, an authorized representative submitted or caused to be submitted Joe's of DC's first-draw PPP loan application to Wintrust Bank.

259. On or about June 16, 2020, in reliance on Joe's of DC's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued first-draw PPP loan # 6784137907 (the "Joe's of DC Loan 7907") to Joe's of DC in the amount of $1,964,091.00.

260. On or about September 23, 2021, the Joe's of DC Loan 7907 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,988,860.37.

**To Circumvent the $20 Million Cap,**
**Just B' Claws Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

261. On or about April 8, 2020, Just B' Claws received a first-draw PPP loan, loan # 8715297000 (the "Just B' Claws Loan 7000"), from a bank in the amount of $1,777,500.00.

262. On or about May 5, 2020, the Just B' Claws Loan 7000 was reported cancelled. Upon information and belief, Just B' Claws had repaid its loan in order to circumvent the SBA's $20 million loan cap.

263. In or before February 2021, an authorized representative of Just B' Claws prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483-) on behalf of Just B' Claws to Wintrust Bank.

264. Upon information and belief, an authorized representative of Just B' Claws prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Just B' Claws was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Just B' Claws and the other Lettuce Entities (including Defendants) were part

of the same single corporate group, and by omitting information concerning those companies' common ownership.

265. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

266. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

267. Upon information and belief, Just B' Claws repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

268. Upon information and belief, an authorized representative of Just B' Claws falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

269. In or before February 2021, an authorized representative submitted or caused to be submitted Just B' Claws's second first-draw PPP loan application to Wintrust Bank.

270. On or about February 25, 2021, in reliance on Just B' Claws's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP

loan # 4296928503 to Just B' Claws in the amount of $1,777,469.00 (the "Just B' Claws Loan 8503").

271. On or about January 31, 2022, the Just B' Claws Loan 8503 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,793,564.97.

**To Circumvent the $20 Million Cap,
Kinzie Street Applies for and Receives a Second
First-Draw PPP Loan, which is Later Forgiven**

272. On or about April 8, 2020, Kinzie Street received a first-draw PPP loan, loan # 7749807002 (the "Kinzie Street Loan 7002"), from a bank in the amount of $1,723,851.00.

273. On or about May 5, 2020, the Kinzie Street Loan 7002 was reported cancelled. Upon information and belief, Kinzie Street had repaid its loan in order to circumvent the SBA's $20 million loan cap.

274. In or before June 2020, an authorized representative of Kinzie Street prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Kinzie Street to Wintrust Bank.

275. Upon information and belief, an authorized representative of Kinzie Street prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Kinzie Street was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Kinzie Street and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

276. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an

owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

277. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

278. Upon information and belief, Kinzie Street repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

279. Upon information and belief, an authorized representative of Kinzie Street falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

280. In or before June 2020, an authorized representative submitted or caused to be submitted Kinzie Street's second first-draw PPP loan application to Wintrust Bank.

281. On or about June 16, 2020, in reliance on Kinzie Street's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6555367902 to Kinzie Street in the amount of $1,720,833.00 (the "Kinzie Street Loan 7902").

282. On or about October 6, 2021, the Kinzie Street Loan 7902 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,743,156.03.

**To Circumvent the $20 Million Cap,**
**Lettuce Consulting Applies for and Receives a**
**First-Draw PPP Loan, which is Later Forgiven**

283. In or before June 2020, an authorized representative of Lettuce Consulting prepared or caused to be prepared an SBA application for first-draw PPP loan (SBA Form 2483) on behalf of Lettuce Consulting to Wintrust Bank.

284. Upon information and belief, an authorized representative of Lettuce Consulting prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Lettuce Consulting was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Lettuce Consulting and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

285. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

286. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

287. Upon information and belief, Lettuce Consulting repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

288. Upon information and belief, an authorized representative of Lettuce Consulting falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

289. In or around June 2020, an authorized representative submitted or caused to be submitted Lettuce Consulting's first-draw PPP loan application to Wintrust Bank.

290. On or about June 16, 2020, in reliance on Lettuce Consulting's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued first-draw PPP loan # 6980437900 (the "Lettuce Consulting Loan 7900") to Lettuce Consulting in the amount of $39,505.00.

291. On or about November 2, 2021, the Lettuce Consulting Loan 7900 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $12,360.06.

**To Circumvent the $20 Million Cap,**
**M Street Kitchen Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

292. On or about April 7, 2020, M Street Kitchen received a first-draw PPP loan, loan # 7515197006 (the "M Street Kitchen Loan 7006"), from a bank in the amount of $424,350.00.

293. On or about May 5, 2020, the M Street Kitchen Loan 7006 was reported cancelled. Upon information and belief, M Street Kitchen had repaid its loan in order to circumvent the SBA's $20 million loan cap.

294. In or before June 2020, an authorized representative of M Street Kitchen prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of M Street Kitchen to Wintrust Bank.

295. Upon information and belief, an authorized representative of M Street Kitchen prepared SBA Form 2483, in which the representative falsely and fraudulently certified that M Street Kitchen was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that M Street Kitchen and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

296. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

297. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

298. Upon information and belief, M Street Kitchen repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

299. Upon information and belief, an authorized representative of M Street Kitchen falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

300. In or before June 2020, an authorized representative submitted or caused to be submitted M Street Kitchen's second first-draw PPP loan application to Wintrust Bank.

301. On or about June 16, 2020, in reliance on M Street Kitchen's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6781047909 to M Street Kitchen in the amount of $424,340.00 (the "M Street Kitchen Loan 7909").

302. On or about October 6, 2021, the M Street Kitchen Loan 7909 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $429,844.63.

**To Circumvent the $20 Million Cap,**
**Mon Ami Bethesda Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

303. On or about May 3, 2020, Mon Ami Bethesda received a first-draw PPP loan, loan # 6110457706 (the "Mon Ami Bethesda Loan 7706), from a bank in the amount of $615,723.00.

304. On or about May 7, 2020, the Mon Ami Bethesda Loan 7706 was reported cancelled. Upon information and belief, Mon Ami Bethesda had repaid its loan in order to circumvent the SBA's $20 million loan cap.

305. In or before June 2020, an authorized representative of Mon Ami Bethesda prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Mon Ami Bethesda to Wintrust Bank.

306. Upon information and belief, an authorized representative of Mon Ami Bethesda prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Mon Ami Bethesda was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Mon Ami Bethesda and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

307. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

308. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

309. Upon information and belief, Mon Ami Bethesda repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

310. Upon information and belief, an authorized representative of Mon Ami Bethesda falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

311. In or before June 2020, an authorized representative submitted or caused to be submitted Mon Ami Bethesda's second first-draw PPP loan application to Wintrust Bank.

312. On or about June 16, 2020, in reliance on Mon Ami Bethesda's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6866197907 to Mon Ami Bethesda in the amount of $615,723.00 (the "Mon Ami Bethesda Loan 7907").

313. On or about October 28, 2021, the Mon Ami Bethesda Loan 7907 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $624,086.57.

**<u>To Circumvent the $20 Million Cap,<br>Mon Ami Gabi Applies for and Receives a<br>First-Draw PPP Loan, which is Later Forgiven</u>**

314. In or before February 2021, an authorized representative of Mon Ami Gabi prepared or caused to be prepared an SBA application for first-draw PPP loan (SBA Form 2483) on behalf of Mon Ami Gabi to Wintrust Bank.

315. Upon information and belief, an authorized representative of Mon Ami Gabi prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Mon Ami Gabi was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Mon Ami Gabi and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

316. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

317. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

318. Upon information and belief, Mon Ami Gabi repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

319. Upon information and belief, an authorized representative of Mon Ami Gabi falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

320. In or around February 2021, an authorized representative submitted or caused to be submitted Mon Ami Gabi's first-draw PPP loan application to Wintrust Bank.

321. On or about February 25, 2021, in reliance on Mon Ami Gabi's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued first-draw PPP loan # 4051558501 (the "Mon Ami Gabi 8501") to Mon Ami Gabi in the amount of $490,379.00.

322. On or about December 21, 2021, the Mon Ami Gabi Loan 8501 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $494,288.41.

**<u>To Circumvent the $20 Million Cap,<br>Mon Ami Reston Applies for and Receives a Second<br>First-Draw PPP Loan, which is Later Forgiven</u>**

323. On or about April 8, 2020, Mon Ami Reston received a first-draw PPP loan, loan # 7966117003 (the "Mon Ami Reston Loan 7003"), from a bank in the amount of $710,524.00.

324. On or about May 5, 2020, the Mon Ami Reston Loan 7003 was reported cancelled. Upon information and belief, Mon Ami Reston had repaid its loan in order to circumvent the SBA's $20 million loan cap.

325. In or before June 2020, an authorized representative of Mon Ami Reston prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Mon Ami Reston to Wintrust Bank.

326. Upon information and belief, an authorized representative of Mon Ami Reston prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Mon Ami Reston was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Mon Ami Reston and the other Lettuce Entities (including Defendants)

were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

327. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

328. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

329. Upon information and belief, Mon Ami Reston repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

330. Upon information and belief, an authorized representative of Mon Ami Reston falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

331. In or before June 2020, an authorized representative submitted or caused to be submitted Mon Ami Reston's second first-draw PPP loan application to Wintrust Bank.

332. On or about June 16, 2020, in reliance on Mon Ami Reston's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP

loan # 6832527901 to Mon Ami Reston in the amount of $710,524.00 (the "Mon Ami Reston Loan 7901").

333. On or about September 23, 2021, the Mon Ami Reston Loan 7901 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $719,484.50.

**To Circumvent the $20 Million Cap, Northbrook Seafood Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

334. On or about April 15, 2020, Northbrook Seafood received a first-draw PPP loan, loan # 1039057207 (the "Northbrook Seafood Loan 7207) from a bank in the amount of $520,687.00.

335. On or about May 6, 2020, the Northbrook Seafood Loan 7207 was reported cancelled. Upon information and belief, Northbrook Seafood had repaid its loan in order to circumvent the SBA's $20 million loan cap.

336. In or before March 2021, an authorized representative of Northbrook Seafood prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Northbrook Seafood to Wintrust Bank.

337. Upon information and belief, an authorized representative of Northbrook Seafood prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Northbrook Seafood was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Northbrook Seafood and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

338. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

339. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

340. Upon information and belief, Northbrook Seafood repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

341. Upon information and belief, an authorized representative of Northbrook Seafood falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

342. In or before March 2021, an authorized representative submitted or caused to be submitted Northbrook Seafood's second first-draw PPP loan application to Wintrust Bank.

343. On or about March 25, 2021, in reliance on Northbrook Seafood's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 8730858606 to Northbrook Seafood in the amount of $520,687.00 (the "Northbrook Seafood Loan 8606").

344. On or about December 15, 2021, the Northbrook Seafood Loan 8606 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $524,302.88.

**To Circumvent the $20 Million Cap, NWH Beatrix Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

345. On or about April 9, 2020, NWH Beatrix received a first-draw PPP loan, loan # 8794037000 (the "NWH Beatrix Loan 7000") from a bank in the amount of $922,600.00.

346. On or about May 5, 2020, the NWH Beatrix Loan 7000 was reported cancelled. Upon information and belief, NWH Beatrix had repaid its loan in order to circumvent the SBA's $20 million loan cap.

347. In or before June 2020, an authorized representative of NWH Beatrix prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of NWH Beatrix to Wintrust Bank.

348. Upon information and belief, an authorized representative of NWH Beatrix prepared SBA Form 2483, in which the representative falsely and fraudulently certified that NWH Beatrix was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that NWH Beatrix and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

349. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

350. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

351. Upon information and belief, NWH Beatrix repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

352. Upon information and belief, an authorized representative of NWH Beatrix falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

353. In or before June 2020, an authorized representative submitted or caused to be submitted NWH Beatrix's second first-draw PPP loan application to Wintrust Bank.

354. On or about June 16, 2020, in reliance on NWH Beatrix's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6446617906 to NWH Beatrix in the amount of $922,577.00 (the "NWH Beatrix Loan 7906").

355. On or about September 23, 2021, the NWH Beatrix Loan 7906 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $934,211.72.

**To Circumvent the $20 Million Cap, Ohio Street Events Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

356. On or about April 15, 2020, Ohio Street Events received a first-draw PPP loan, loan # 9553637105 (the "Ohio Street Events Loan 7105"), from a bank in the amount of $398,157.00.

357. On or about May 6, 2020, the Ohio Street Events Loan 7105 was reported cancelled. Upon information and belief, Ohio Street Events had repaid its loan in order to circumvent the SBA's $20 million loan cap.

358. In or before May 2021, an authorized representative of Ohio Street Events prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Ohio Street Events to Wintrust Bank.

359. Upon information and belief, an authorized representative of Ohio Street Events prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Ohio Street Events was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Ohio Street Events and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

360. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

361. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

362. Upon information and belief, Ohio Street Events repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

363. Upon information and belief, an authorized representative of Ohio Street Events falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

364. In or before May 2021, an authorized representative submitted or caused to be submitted Ohio Street Events' second first-draw PPP loan application to Wintrust Bank.

365. On or about May 18, 2021, in reliance on Ohio Street Events' materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 2854299006 to Ohio Street Events in the amount of $398,157.00 (the "Ohio Street Events Loan 9006").

366. On or about December 20, 2021, the Ohio Street Events Loan 9006 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $400,424.28.

**To Circumvent the $20 Million Cap,**
**Osteria Wheeling Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

367. On or about May 3, 2020, Osteria Wheeling received a first-draw PPP loan, loan # 6047157706 (the "Osteria Wheeling Loan 7706"), from a bank in the amount of $745,125.00.

368. On or about May 7, 2020, the Osteria Wheeling Loan 7706 was reported cancelled. Upon information and belief, Osteria Wheeling had repaid its loan in order to circumvent the SBA's $20 million loan cap.

369. In or before February 2021, an authorized representative of Osteria Wheeling prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Osteria Wheeling to Wintrust Bank.

370. Upon information and belief, an authorized representative of Osteria Wheeling prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Osteria Wheeling was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Osteria Wheeling the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

371. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

372. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

373. Upon information and belief, Osteria Wheeling repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

374. Upon information and belief, an authorized representative of Osteria Wheeling falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

375. In or before February 2021, an authorized representative submitted or caused to be submitted Osteria Wheeling's second first-draw PPP loan application to Wintrust Bank.

376. On or about February 24, 2021, in reliance on Osteria Wheeling's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 3801038504 to Osteria Wheeling in the amount of $745,125.00 (the "Osteria Wheeling Loan 8504").

377. On or about January 21, 2022, the Osteria Wheeling Loan 8504 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $751,706.94.

**<u>To Circumvent the $20 Million Cap, OVS Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven</u>**

378. On or about April 14, 2020, OVS received a first-draw PPP loan, loan # 6517967109 (the "OVS Loan 7109"), from a bank in the amount of $809,209.00.

379. On or about May 6, 2020, the OVS Loan 7109 was reported cancelled. Upon information and belief, OVS had repaid its loan in order to circumvent the SBA's $20 million loan cap.

380. In or before February 2021, an authorized representative of OVS prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of OVS to Wintrust Bank.

381. Upon information and belief, an authorized representative of OVS prepared SBA Form 2483, in which the representative falsely and fraudulently certified that OVS was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that OVS and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

382. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

383. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

384. Upon information and belief, OVS repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

385. Upon information and belief, an authorized representative of OVS falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

386. In or before February 2021, an authorized representative submitted or caused to be submitted OVS' second first-draw PPP loan application to Wintrust Bank.

387. On or about February 24, 2021, in reliance on OVS' materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 3558968500 to OVS in the amount of $809,210.00 (the "OVS Loan 8500").

388. On or about January 31, 2022, the OVS Loan 8500 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $816,537.85.

**To Circumvent the $20 Million Cap, Phase One Applies for and Receives a First-Draw PPP Loan, which is Later Forgiven**

389. In or before January 2021, an authorized representative of Phase One prepared or caused to be prepared an SBA application for first-draw PPP loan (SBA Form 2483) on behalf of Phase One to Wintrust Bank.

390. Upon information and belief, an authorized representative of Phase One prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Phase One was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Phase One and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

391. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

392. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

393. Upon information and belief, Phase One repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

394. Upon information and belief, an authorized representative of Phase One falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

395. In or around January 2021, an authorized representative submitted or caused to be submitted Phase One's first-draw PPP loan application to Wintrust Bank.

396. On or about January 25, 2021, in reliance on Phase One's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued first-draw PPP loan # 5601878307 (the "Phase One Loan 8307") to Phase One in the amount of $42,262.00.

397. On or about December 14, 2021, the Phase One Loan 8307 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $42,590.70.

**To Circumvent the $20 Million Cap, Ramen Fulton Market Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

398. On or about April 7, 2020, Ramen Fulton Market received a first-draw PPP loan, loan # 7535417008 (the "Ramen Fulton Market Loan 7008"), from a bank in the amount of $236,700.00.

399. On or about May 5, 2020, the Ramen Fulton Market Loan 7008 was reported cancelled. Upon information and belief, Ramen Fulton Market had repaid its loan in order to circumvent the SBA's $20 million loan cap.

400. In or before June 2020, an authorized representative of Ramen Fulton Market prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Ramen Fulton Market to Wintrust Bank.

401. Upon information and belief, an authorized representative of Ramen Fulton Market prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Ramen Fulton Market was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Ramen Fulton Market and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

402. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an

owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

403. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

404. Upon information and belief, Ramen Fulton Market repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

405. Upon information and belief, an authorized representative of Ramen Fulton Market falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

406. In or before June 2020, an authorized representative submitted or caused to be submitted Ramen Fulton Market's second first-draw PPP loan application to Wintrust Bank.

407. On or about June 16, 2020, in reliance on Ramen Fulton Market's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6742997909 to Ramen Fulton Market in the amount of $236,657.00 (the "Ramen Fulton Market Loan 7909").

408. On or about October 6, 2021, the Ramen Fulton Market Loan 7909 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $239,726.97.

**To Circumvent the $20 Million Cap, Ramen NMH Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

409. On or about April 14, 2020, Ramen NMH received a first-draw PPP loan, loan # 6393607103 (the "Ramen NHM Loan 7103"), from a bank in the amount of $333,542.50.

410. On or about May 6, 2020, the Ramen NHM Loan 7103was reported cancelled. Upon information and belief, Ramen NMH had repaid its loan in order to circumvent the SBA's $20 million loan cap.

411. In or before June 16, 2020, an authorized representative of Ramen NMH prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Ramen NMH to Wintrust Bank.

412. Upon information and belief, an authorized representative of Ramen NMH prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Ramen NMH was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Ramen NMH and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

413. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

414. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

415. Upon information and belief, Ramen NMH repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

416. Upon information and belief, an authorized representative of Ramen NMH falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

417. In or before June 2020, an authorized representative submitted or caused to be submitted Ramen NMH's second first-draw PPP loan application to Wintrust Bank.

418. On or about June 16, 2020, in reliance on Ramen NMH's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6981437902 to Ramen NMH in the amount of $333,543.00 (the "Ramen NMH Loan 7902").

419. On or about October 6, 2021, the Ramen NMH Loan 7902 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $337,869.79.

**To Circumvent the $20 Million Cap, River North Italian Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

420. On or about April 8, 2020, River North Italian received a first-draw PPP loan, loan # 8704207000 (the "River North Italian Loan 7000"), from a bank in the amount of $1,670,800.00.

421. On or about May 5, 2020, the River North Italian Loan 7000was reported cancelled. Upon information and belief, River North Italian had repaid its loan in order to circumvent the SBA's $20 million loan cap.

422. In or before February 2021, an authorized representative of River North Italian prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of River North Italian to Wintrust Bank.

423. Upon information and belief, an authorized representative of River North Italian prepared SBA Form 2483, in which the representative falsely and fraudulently certified that River North Italian was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that River North Italian and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

424. Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information. Specifically, the representative falsely and fraudulently omitted to state that the other Defendants were affiliated businesses that shared common ownership.

425. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

426. Upon information and belief, River North Italian repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

427. Upon information and belief, an authorized representative of River North Italian falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

428. In or before February 2021, an authorized representative submitted or caused to be submitted River North Italian's second first-draw PPP loan application to Wintrust Bank.

429. On or about February 24, 2021, in reliance on River North Italian's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 3587978502 to River North Italian in the amount of $1,670,762.00 (the "River North Italian Loan 8502").

430. On or about February 19, 2022, the River North Italian Loan 8502 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,685,427.58.

**To Circumvent the $20 Million Cap, Rockville Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

431. On or about April 8, 2020, Rockville received a first-draw PPP loan, loan # 8126177001 (the "Rockville Loan 7001"), from a bank in the amount of $694,297.00.

432. On or about May 5, 2020, the Rockville Loan 7001 was reported cancelled. Upon information and belief, Rockville had repaid its loan in order to circumvent the SBA's $20 million loan cap.

433. In or before June 2020, an authorized representative of Rockville prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Rockville to Wintrust Bank.

434. Upon information and belief, an authorized representative of Rockville prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Rockville was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Rockville and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

435. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

436. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

437. Upon information and belief, Rockville repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

438. Upon information and belief, an authorized representative of Rockville falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

439. In or before June 2020, an authorized representative submitted or caused to be submitted Rockville's second first-draw PPP loan application to Wintrust Bank.

440. On or about June 16, 2020, in reliance on Rockville's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6521907900 to Rockville in the amount of $694,297.00 (the "Rockville Loan 7900").

441. On or about September 16, 2021, the Rockville Loan 7900 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $702,917.85.

**To Circumvent the $20 Million Cap,
Rosemont Applies for and Receives a Second
First-Draw PPP Loan, which is Later Forgiven**

442. On or about April 8, 2020, Rosemont received a first-draw PPP loan, loan # 7921427009 (the "Rosemont Loan 7009"), from a bank in the amount of $911,258.00.

443. On or about May 5, 2020, the Rosemont Loan 7009was reported cancelled. Upon information and belief, Rosemont had repaid its loan in order to circumvent the SBA's $20 million loan cap.

444. In or before June 2020, an authorized representative of Rosemont prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Rosemont to Wintrust Bank.

445. Upon information and belief, an authorized representative of Rosemont prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Rosemont was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Rosemont and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

446. Specifically, Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

447. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

448. Upon information and belief, Rosemont repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

449. Upon information and belief, an authorized representative of Rosemont falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

450. In or before June 2020, an authorized representative submitted or caused to be submitted Rosemont's second first-draw PPP loan application to Wintrust Bank.

451. On or about June 16, 2020, in reliance on Rosemont's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6519467900 to Rosemont in the amount of $911,258.00 (the "Rosemont Loan 7900").

452. On or about February 3, 2022, the Rosemont Loan 7900 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $926,116.57.

**<u>To Circumvent the $20 Million Cap, RPM DC Applies for and Receives a First-Draw PPP Loan, which is Later Forgiven</u>**

453. In or before June 2020, an authorized representative of RPM DC prepared or caused to be prepared an SBA application for first-draw PPP loan (SBA Form 2483) on behalf of RPM DC to Wintrust Bank.

454. Upon information and belief, an authorized representative of RPM DC prepared SBA Form 2483, in which the representative falsely and fraudulently certified that RPM DC was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that RPM DC and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

455. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

456. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

457. Upon information and belief, RPM DC repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

458. Upon information and belief, an authorized representative of RPM DC falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

459. In or around June 2020, an authorized representative submitted or caused to be submitted RPM DC's first-draw PPP loan application to Wintrust Bank.

460. On or about June 16, 2020, in reliance on RPM DC's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued first-draw PPP loan # 6443957908 (the "RPM DC Loan 7908") to RPM DC in the amount of $1,140,007.00.

461. On or about November 1, 2021, the RPM DC Loan 7908 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,155,555.43.

**To Circumvent the $20 Million Cap, Shaw's Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

462. On or about April 16, 2020, Shaw's received a first-draw PPP loan, loan # 1912897207 (the "Shaw's Loan 7207"), from a bank in the amount of $894,254.00.

463. On or about May 6, 2020, the Shaw's Loan 7207 was reported cancelled. Upon information and belief, Shaw's had repaid its loan in order to circumvent the SBA's $20 million loan cap.

464. In or before June 2020, an authorized representative of Shaw's prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Shaw's to Wintrust Bank.

465. Upon information and belief, an authorized representative of Shaw's prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Shaw's was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Shaw's and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

466. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

467. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

468. Upon information and belief, Shaw's repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

469. Upon information and belief, an authorized representative of Shaw's falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

470. In or before June 2020, an authorized representative submitted or caused to be submitted Shaw's' second first-draw PPP loan application to Wintrust Bank.

471. On or about June 16, 2020, in reliance on Shaw's' materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6766447902 to Shaw's in the amount of $894,254.00 (the "Shaw's Loan 7902").

472. On or about October 6, 2021, the Shaw's Loan 7902 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $905,854.46.

**To Circumvent the $20 Million Cap, Wheeling Banquets Applies for and Receives a First-Draw PPP Loan, which is Later Forgiven**

473. In or before June 2020, an authorized representative of Wheeling Banquets prepared or caused to be prepared an SBA application for first-draw PPP loan (SBA Form 2483) on behalf of Wheeling Banquets to Wintrust Bank.

474. Upon information and belief, an authorized representative of Wheeling Banquets prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Wheeling Banquets was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Wheeling Banquets and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

475. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

476. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

477. Upon information and belief, Wheeling Banquets repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

478. Upon information and belief, an authorized representative of Wheeling Banquets falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

479. In or around June 2020, an authorized representative submitted or caused to be submitted Wheeling Banquets' first-draw PPP loan application to Wintrust Bank.

480. On or about June 16, 2020, in reliance on Wheeling Banquets' materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued first-draw PPP loan # 6626937905 (the "Wheeling Banquets Loan 7905") to Wheeling Banquets in the amount of $407,740.00.

481. On or about October 21, 2021, the Wheeling Banquets Loan 7905 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $407,889.52.

**To Circumvent the $20 Million Cap,**
**Vegas Tapas Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

482. On or about April 7, 2020, Vegas Tapas received a first-draw PPP loan, loan # 7508977006 (the "Vegas Tapas Loan 7006"), from a bank in the amount of $806,950.00.

483. On or about May 5, 2020, the Vegas Tapas Loan 7006was reported cancelled. Upon information and belief, Vegas Tapas had repaid its loan in order to circumvent the SBA's $20 million loan cap.

484. In or before June 2020, an authorized representative of Vegas Tapas prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Vegas Tapas to Wintrust Bank.

485. Upon information and belief, an authorized representative of Vegas Tapas prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Shaw's was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Vegas Tapas and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

486. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

487. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

488. Upon information and belief, Vegas Tapas repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

489. Upon information and belief, an authorized representative of Vegas Tapas falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material

respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

490. In or before June 2020, an authorized representative submitted or caused to be submitted Vegas Tapas' second first-draw PPP loan application to Wintrust Bank.

491. On or about June 16, 2020, in reliance on Vegas Tapas' materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6788387909 to Vegas Tapas in the amount of $806,918.00 (the "Vegas Tapas Loan 7909").

492. On or about October 6, 2021, the Vegas Tapas Loan 7909 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $817,385.52.

**To Circumvent the $20 Million Cap, Wildfire Eden Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

493. On or about April 16, 2020, Wildfire Eden received a first-draw PPP loan, loan # 2129097206 (the "Wildfire Eden Loan 7206"), from a bank in the amount of $799,857.00.

494. On or about May 6, 2020, the Wildfire Eden Loan 7206 was reported cancelled. Upon information and belief, Wildfire Eden had repaid its loan in order to circumvent the SBA's $20 million loan cap.

495. In or before February 2021, an authorized representative of Wildfire Eden prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Wildfire Eden to Wintrust Bank.

496. Upon information and belief, an authorized representative of Wildfire Eden prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Wildfire Eden was a small business eligible for participation in the PPP Loan Program, by failing

to acknowledge that Wildfire Eden and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

497. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

498. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

499. Upon information and belief, Wildfire Eden repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

500. Upon information and belief, an authorized representative of Wildfire Eden falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

501. In or before February 2021, an authorized representative submitted or caused to be submitted Wildfire Eden's second first-draw PPP loan application to Wintrust Bank.

502. On or about February 26, 2021, in reliance on Wildfire Eden's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 4637168510 to Wildfire Eden in the amount of $799,858.00 (the "Wildfire Eden Loan 8510").

503. On or about January 21, 2022, the Wildfire Eden Loan 8510 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $806,834.54.

**To Circumvent the $20 Million Cap, Wildfire Schaumburg Applies for and Receives a Second First-Draw PPP Loan, which is Later Forgiven**

504. On or about April 7, 2020, Wildfire Schaumburg received a first-draw PPP loan, loan # 7499067001 (the "Wildfire Schaumburg Loan 7001"), from a bank in the amount of $1,092,900.00.

505. On or about May 5, 2020, the Wildfire Schaumburg Loan 7001 was reported cancelled. Upon information and belief, Wildfire Schaumburg had repaid its loan in order to circumvent the SBA's $20 million loan cap.

506. In or before February 2021, an authorized representative of Wildfire Schaumburg prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Wildfire Schaumburg to Wintrust Bank.

507. Upon information and belief, an authorized representative of Wildfire Schaumburg prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Wildfire Schaumburg was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Wildfire Schaumburg and the other Lettuce Entities (including

Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

508. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

509. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

510. Upon information and belief, Wildfire Schaumburg repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

511. Upon information and belief, an authorized representative of Wildfire Schaumburg falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

512. In or before February 2021, an authorized representative submitted or caused to be submitted Wildfire Schaumburg's second first-draw PPP loan application to Wintrust Bank.

513. On or about February 26, 2021, in reliance on Wildfire Schaumburg's materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank

issued PPP loan # 4818248509 to Wildfire Schaumburg in the amount of $1,092,893.00 (the "Wildfire Schaumburg Loan 8509").

514. On or about January 21, 2022, the Wildfire Schaumburg Loan 8509 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,102,546.89.

**To Circumvent the $20 Million Cap,**
**Wildfire Tysons Applies for and Receives a Second**
**First-Draw PPP Loan, which is Later Forgiven**

515. On or about April 8, 2020, Wildfire Tysons received a first-draw PPP loan, loan # 8102387000 (the "Wildfire Tysons Loan 7000"), from a bank in the amount of $786,277.00.

516. On or about May 5, 2020, the Wildfire Tysons Loan 7000 was reported cancelled. Upon information and belief, Wildfire Tysons had repaid its loan in order to circumvent the SBA's $20 million loan cap.

517. In or before June 2020, an authorized representative of Wildfire Tysons prepared or caused to be prepared an SBA application for a second first-draw PPP loan (SBA Form 2483) on behalf of Wildfire Tysons to Wintrust Bank.

518. Upon information and belief, an authorized representative of Wildfire Tysons prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Wildfire Tysons was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Wildfire Tysons and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

519. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an

owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

520. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

521. Upon information and belief, Wildfire Tysons repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

522. Upon information and belief, an authorized representative of Wildfire Tysons falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

523. In or before June 2020, an authorized representative submitted or caused to be submitted Wildfire Tysons' second first-draw PPP loan application to Wintrust Bank.

524. On or about June 16, 2020, in reliance on Wildfire Tysons' materially false and fraudulent representations and certifications in the loan applications, Wintrust Bank issued PPP loan # 6785997909 to Wildfire Tysons in the amount of $786,277.00 (the "Wildfire Tysons Loan 7909").

525. On or about September 2, 2021, the Wildfire Tysons Loan 7909 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $795,734.17.

**To Circumvent the $20 Million Cap, BBCE Applies for and Receives a First-Draw PPP Loan, which is Later Forgiven**

526. In or before July 2020, an authorized representative of BBCE_prepared or caused to be prepared an SBA application for first-draw PPP loan (SBA Form 2483) on behalf of BBCE to Wintrust Bank.

527. Upon information and belief, an authorized representative of BBCE prepared SBA Form 2483, in which the representative falsely and fraudulently certified that BBCE was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that BBCE and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

528. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

529. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

530. Upon information and belief, BBCE repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

531. Upon information and belief, an authorized representative of BBCE falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

532. In or around July 2020, an authorized representative submitted or caused to be submitted BBCE's first-draw PPP loan application to Wintrust Bank.

533. On or about July 29, 2020, in reliance on BBCE's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued first-draw PPP loan # 1197938202 (the "BBCE Loan 8202") to BBCE in the amount of $172,780.00.

534. On or about October 28, 2021, the BBCE Loan 8202 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $157,803.43.

**To Circumvent the $20 Million Cap,**
**Halsted Kitchen Applies for and Receives a**
**First-Draw PPP Loan, which is Later Forgiven**

535. In or before June 2020, an authorized representative of Halsted Kitchen_prepared or caused to be prepared an SBA application for first-draw PPP loan (SBA Form 2483) on behalf of Halsted Kitchen to Wintrust Bank.

536. Upon information and belief, an authorized representative of Halsted Kitchen prepared SBA Form 2483, in which the representative falsely and fraudulently certified that Halsted Kitchen was a small business eligible for participation in the PPP Loan Program, by failing

to acknowledge that Halsted Kitchen and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

537. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

538. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

539. Upon information and belief, Halsted Kitchen repaid its first first-draw PPP loan and later applied for a second first-draw PPP loan to avoid the SBA's $20 million corporate group loan cap.

540. Upon information and belief, an authorized representative of Halsted Kitchen falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

541. In or around June 2020, an authorized representative submitted or caused to be submitted Halsted Kitchen's first-draw PPP loan application to Wintrust Bank.

542. On or about June 16, 2020, in reliance on Halsted Kitchen's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued first-draw PPP loan # 6776327905 (the "Halsted Kitchen Loan 7905") to Halsted Kitchen in the amount of $1,306,258.00.

543. On or about September 23, 2021, the Halsted Kitchen Loan 7905 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,322,731.36.

## SECOND-DRAW PPP LOANS

### To Circumvent the $4 Million Cap, 159 LTD Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven

544. In or before March 2021, an authorized representative of 159 LTD prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of 159 LTD to Wintrust Bank.

545. Upon information and belief, an authorized representative of 159 LTD prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that 159 LTD was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that 159 LTD and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

546. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

547. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

548. Upon information and belief, 159 LTD applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

549. Upon information and belief, an authorized representative of 159 LTD falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

550. In or around March 2021, an authorized representative submitted or caused to be submitted 159 LTD's second-draw PPP loan application to Wintrust Bank.

551. On or about March 20, 2021, in reliance on 159 LTD's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 5572708607 (the "159 LTD Loan 8607") to 159 LTD in the amount of $975,659.00.

552. On or about March 3, 2020, the 159 LTD Loan 8607 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $984,765.15.

**<u>To Circumvent the $4 Million Cap, 59 West Hubbard Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven</u>**

553. In or before March 2021, an authorized representative of 59 West Hubbard prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of 59 West Hubbard to Wintrust Bank.

554. Upon information and belief, an authorized representative of 59 West Hubbard prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that 59 West Hubbard was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that 59 West Hubbard and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

555. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

556. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

557. Upon information and belief, 59 West Hubbard applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

558. Upon information and belief, an authorized representative of 59 West Hubbard falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

559. In or around March 2021, an authorized representative submitted or caused to be submitted 59 West Hubbard's second-draw PPP loan application to Wintrust Bank.

560. On or about March 6, 2021, in reliance on 59 West Hubbard's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 7710058502 (the "59 West Hubbard Loan 8502") to 59 West Hubbard in the amount of $1,746,752.00.

561. On or about February 15, 2022, the 59 West Hubbard Loan 8607 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,763,200.58.

**To Circumvent the $4 Million Cap,**
**Beatrix Oak Brook Applies for and Receives**
**a Second-Draw PPP Loan, which is Later Forgiven**

562. In or before February 2021, an authorized representative of Beatrix Oak Brook prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Beatrix Oak Brook to Wintrust Bank.

563. Upon information and belief, an authorized representative of Beatrix Oak Brook prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Beatrix Oak Brook was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Beatrix Oak Brook and the other Lettuce Entities (including

Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

564. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

565. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

566. Upon information and belief, Beatrix Oak Brook applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

567. Upon information and belief, an authorized representative of Beatrix Oak Brook falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

568. In or around February 2021, an authorized representative submitted or caused to be submitted Beatrix Oak Brook's second-draw PPP loan application to Wintrust Bank.

569. On or about February 23, 2021, in reliance on Beatrix Oak Brook's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued

second-draw PPP loan # 3148208503 (the "Beatrix Oak Brook Loan 8503") to Beatrix Oak Brook in the amount of $815,356.00.

570. On or about March 3, 2022, the Beatrix Oak Brook Loan 8503 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $823,486.91.

**To Circumvent the $4 Million Cap,**
**Clark Loft Applies for and Receives**
**a Second-Draw PPP Loan, which is Later Forgiven**

571. In or before February 2021, an authorized representative of Clark Loft prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Clark Loft to Wintrust Bank.

572. Upon information and belief, an authorized representative of Clark Loft prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Clark Loft was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Clark Loft and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

573. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

574. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that



SHN\792478.1

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

575. Upon information and belief, Clark Loft applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

576. Upon information and belief, an authorized representative of Clark Loft falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

577. In or around February 2021, an authorized representative submitted or caused to be submitted Clark Loft's second-draw PPP loan application to Wintrust Bank.

578. On or about February 25,2021, in reliance on Clark Loft's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 4106798501 (the "Clark Loft Loan 8501") to 159 LTD in the amount of $1,314,597.00.

579. On or about February 25, 2022, the Clark Loft Loan 8501was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,327,487.35.

**<u>To Circumvent the $4 Million Cap,</u>**
**<u>Dearborn Hubbard Applies for and Receives</u>**
**<u>a Second-Draw PPP Loan, which is Later Forgiven</u>**

580. In or before February 2021, an authorized representative of Dearborn Hubbard prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Dearborn Hubbard to Wintrust Bank.

581. Upon information and belief, an authorized representative of Dearborn Hubbard prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Dearborn Hubbard was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Dearborn Hubbard and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

582. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

583. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

584. Upon information and belief, Dearborn Hubbard applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

585. Upon information and belief, an authorized representative of Dearborn Hubbard falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

586. In or around February 2021, an authorized representative submitted or caused to be submitted Dearborn Hubbard's second-draw PPP loan application to Wintrust Bank.

587. On or about February 25, 2021, in reliance on Dearborn Hubbard's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 4246328502 (the "Dearborn Hubbard Loan 8502") to Dearborn Hubbard in the amount of $1,215,001.00.

588. On or about March 14, 2022, the Dearborn Hubbard Loan 8502 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,227,421.01.

**<u>To Circumvent the $4 Million Cap, Halsted Oyster Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven</u>**

589. In or before February 2021, an authorized representative of Halsted Oyster prepared or caused to be prepared an SBA application for second-draw PPP loan (using SBA Form 2483-SD) on behalf of Halsted Oyster to Wintrust Bank.

590. Upon information and belief, an authorized representative of Halsted Oyster prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Halsted Oyster was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Halsted Oyster and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

591. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an

owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

592. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

593. Upon information and belief, Halsted Oyster applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

594. Upon information and belief, an authorized representative of Halsted Oyster falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

595. In or around February 2021, an authorized representative submitted or caused to be submitted Halsted Oyster's second-draw PPP loan application to Wintrust Bank.

596. On or about February 24, 2021, in reliance on Halsted Oyster's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 3615058506 (the "Halsted Oyster Loan 8506") to Halsted Oyster in the amount of $612,727.00.

597. On or about March 3, 2022, the Halsted Oyster Loan 8506 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $618,837.25.

**To Circumvent the $4 Million Cap, Jackson Market Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven**

598. In or before February 2021, an authorized representative of Jackson Market prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Jackson Market to Wintrust Bank.

599. Upon information and belief, an authorized representative of Jackson Market prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Jackson Market was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Jackson Market and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

600. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

601. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

602. Upon information and belief, Jackson Market applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

603. Upon information and belief, an authorized representative of Jackson Market falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

604. In or around February 2021, an authorized representative submitted or caused to be submitted Jackson Market's second-draw PPP loan application to Wintrust Bank.

605. On or about February 24, 2021, in reliance on Jackson Market's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 3739268501 (the "Jackson Market Loan 8501") to the Jackson Market in the amount of $250,404.00.

606. On or about March 10, 2022, Jackson Market Loan 8501 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $252,949.77.

**To Circumvent the $4 Million Cap,**
**Kinzie Street Applies for and Receives**
**a Second-Draw PPP Loan, which is Later Forgiven**

607. In or before February 2021, an authorized representative of Kinzie Street_prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Kinzie Street to Wintrust Bank.

608. Upon information and belief, an authorized representative of Kinzie Street prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Kinzie Street was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Kinzie Street and the other Lettuce Entities (including Defendants) were part of

the same single corporate group, and by omitting information concerning those companies' common ownership.

609. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

610. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

611. Upon information and belief, Kinzie Street applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

612. Upon information and belief, an authorized representative of Kinzie Street falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

613. In or around February 2021, an authorized representative submitted or caused to be submitted Kinzie Street's second-draw PPP loan application to Wintrust Bank.

614. On or about February 25, 2021, in reliance on Kinzie Street's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-

draw PPP loan # 4416448507 (the "Kinzie Street Loan 8507") to Kinzie Street in the amount of $2,000,000.00.

615. On or about March 25, 2022, the Kinzie Street Loan 8507 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $2,021,166.67.

**To Circumvent the $4 Million Cap, M Street Kitchen Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven**

616. In or before January 2021, an authorized representative of M Street Kitchen prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of M Street Kitchen to Wintrust Bank.

617. Upon information and belief, an authorized representative of M Street Kitchen prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that M Street Kitchen was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that M Street Kitchen and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

618. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

619. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that



SHN\792478.1

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

620. Upon information and belief, M Street Kitchen applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

621. Upon information and belief, an authorized representative of M Street Kitchen falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

622. In or around January 2021, an authorized representative submitted or caused to be submitted M Street Kitchen's second-draw PPP loan application to Wintrust Bank.

623. On or about January 23, 2021, in reliance on M Street Kitchen's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 4857518303 (the "M Street Kitchen Loan 8303") to M Street Kitchen in the amount of $594,076.00.

624. On or about March 17, 2022, the M Street Kitchen Loan 8303 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $600,231.29.

**<u>To Circumvent the $4 Million Cap,<br>Mon Ami Bethesda Applies for and Receives<br>a Second-Draw PPP Loan, which is Later Forgiven</u>**

625. In or before February 2021, an authorized representative of Mon Ami Bethesda prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Mon Ami Bethesda to Wintrust Bank.

626. Upon information and belief, an authorized representative of Mon Ami Bethesda prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Mon Ami Bethesda was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Mon Ami Bethesda and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

627. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

628. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

629. Upon information and belief, Mon Ami Bethesda applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

630. Upon information and belief, an authorized representative of Mon Ami Bethesda falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

631. In or around February 2021, an authorized representative submitted or caused to be submitted Mon Ami Bethesda's second-draw PPP loan application to Wintrust Bank.

632. On or about February 25, 2021, in reliance on Mon Ami Bethesda's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 4313978510 (the "Mon Ami Bethesda Loan 8510") to Mon Ami Bethesda in the amount of $862,012.00.

633. On or about March 3, 2022, the Mon Ami Bethesda Loan 8510 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $870,608.18.

**To Circumvent the $4 Million Cap, Mon Ami Reston Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven**

634. In or before February 2021, an authorized representative of Mon Ami Reston prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Mon Ami Reston to Wintrust Bank.

635. Upon information and belief, an authorized representative of Mon Ami Reston prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Mon Ami Reston was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Mon Ami Reston and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

636. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an

owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

637. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

638. Upon information and belief, Mon Ami Reston applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

639. Upon information and belief, an authorized representative of Mon Ami Reston falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

640. In or around February 2021, an authorized representative submitted or caused to be submitted Mon Ami Reston's second-draw PPP loan application to Wintrust Bank.

641. On or about February 25, 2021, in reliance on Mon Ami Reston's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 4305758503 (the "Mon Ami Reston Loan 8503") to Mon Ami Reston in the amount of $994,734.00.

642. On or about March 3, 2022, the Mon Ami Reston Loan 8503 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,004,653.71.

**To Circumvent the $4 Million Cap,**
**NWH Beatrix Applies for and Receives**
**a Second-Draw PPP Loan, which is Later Forgiven**

643. In or before February 2021, an authorized representative of NWH Beatrix prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of NWH Beatrix to Wintrust Bank.

644. Upon information and belief, an authorized representative of NWH Beatrix prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that NWH Beatrix was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that NWH Beatrix and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

645. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

646. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

647. Upon information and belief, NWH Beatrix applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.



SHN\792478.1

648. Upon information and belief, an authorized representative of NWH Beatrix falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

649. In or around February 2021, an authorized representative submitted or caused to be submitted NWH Beatrix's second-draw PPP loan application to Wintrust Bank.

650. On or about February 25, 2021, in reliance on NWH Beatrix's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 4210208510 (the "NWH Beatrix Loan 8510") to NWH Beatrix in the amount of $1,291,608.00.

651. On or about March 3, 2022, the NWH Beatrix Loan 8510 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,304,488.20.

**To Circumvent the $4 Million Cap, Ramen NMH Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven**

652. In or before February 2021, an authorized representative of Ramen NMH prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Ramen NMH to Wintrust Bank.

653. Upon information and belief, an authorized representative of Ramen NMH prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Ramen NMH was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Ramen NMH and the other Lettuce Entities (including Defendants) were part

of the same single corporate group, and by omitting information concerning those companies' common ownership.

654. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

655. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

656. Upon information and belief, Ramen NMH applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

657. Upon information and belief, an authorized representative of Ramen NMH falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

658. In or around February 2021, an authorized representative submitted or caused to be submitted Ramen NMH's second-draw PPP loan application to Wintrust Bank.

659. On or about February 24, 2021, in reliance on Ramen NMH's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-

draw PPP loan # 3924588505 (the "Ramen NMH Loan 8505") to Ramen NMH in the amount of $466,959.00.

660. On or about March 10, 2022, the Ramen NMH Loan 8505 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $471,706.42.

**To Circumvent the $4 Million Cap,**
**Rockville Applies for and Receives**
**a Second-Draw PPP Loan, which is Later Forgiven**

661. In or before February 2021, an authorized representative of Rockville prepared or caused to be prepared an SBA application for second-draw PPP loan (using SBA Form 2483-SD) on behalf of Rockville to Wintrust Bank.

662. Upon information and belief, an authorized representative of Rockville prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Rockville was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Rockville and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

663. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

664. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that



SHN\792478.1

"knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

665. Upon information and belief, Rockville applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

666. Upon information and belief, an authorized representative of Rockville falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

667. In n or around February 2021, an authorized representative submitted or caused to be submitted Rockville's second-draw PPP loan application to Wintrust Bank.

668. On or about February 25, 2021, in reliance on Rockville's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 4434658504 (the "Rockville Loan 8504") to Rockville in the amount of $972,016.00.

669. On or about March 3, 2022, the Rockville Loan 8504 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $981,709.16.

**To Circumvent the $4 Million Cap,**
**Rosemont Applies for and Receives**
**a Second-Draw PPP Loan, which is Later Forgiven**

670. In or before March 2021, an authorized representative of Rosemont prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Rosemont to Wintrust Bank.

671. Upon information and belief, an authorized representative of Rosemont prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Rosemont was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Rosemont and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

672. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

673. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

674. Upon information and belief, Rosemont applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

675. Upon information and belief, an authorized representative of Rosemont falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

676. In or around March 2021, an authorized representative submitted or caused to be submitted Rosemont's second-draw PPP loan application to Wintrust Bank.

677. On or about March 25, 2021, in reliance on Rosemont's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 8820498609 (the "Rosemont Loan 8609") to Rosemont in the amount of $1,275,760.50.

678. On or about March 3, 2022, Rosemont Loan 8609 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,287,632.16.

**To Circumvent the $4 Million Cap, RPM DC Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven**

679. In or before February 2021, an authorized representative of RPM DC prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of RPM DC to Wintrust Bank.

680. Upon information and belief, an authorized representative of RPM DC prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that RPM DC was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that RPM DC and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

681. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

682. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting

documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

683. Upon information and belief, RPM DC applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

684. Upon information and belief, an authorized representative of RPM DC falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

685. In or around February 2021, an authorized representative submitted or caused to be submitted RPM DC's second-draw PPP loan application to Wintrust Bank.

686. On or about February 24, 2021, in reliance on RPM DC's materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 3543408504 (the "RPM DC Loan 8504") to RPM DC in the amount of $1,596,010.00.

687. On or about March 10, 2022, the RPM DC Loan 8504 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,612,236.10.

**To Circumvent the $4 Million Cap,**
**Shaw's Applies for and Receives**
**a Second-Draw PPP Loan, which is Not Yet Forgiven**

688. In or before February 2021, an authorized representative of Shaw's prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Shaw's to Wintrust Bank.

689. Upon information and belief, an authorized representative of Shaw's prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Shaw's was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Shaw's and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

690. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

691. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

692. Upon information and belief, Shaw's applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

693. Upon information and belief, an authorized representative of Shaw's falsely certified or caused to be certified that "the information provided in this application and the

information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

694. In In or around February 2021, an authorized representative submitted or caused to be submitted Shaw's' second-draw PPP loan application to Wintrust Bank.

695. In On or about February 25, 2021, in reliance on Shaw's' materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 4378978500 (the "Shaw's Loan 8500") to Shaw's in the amount of $1,251,956.00.

696. As of the date of this filing, the Shaw's Loan 8500 has not yet been forgiven.

**To Circumvent the $4 Million Cap, Vegas Tapas Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven**

697. In or before February 2021, an authorized representative of Vegas Tapas prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Vegas Tapas to Wintrust Bank.

698. Upon information and belief, an authorized representative of Vegas Tapas prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Vegas Tapas was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Vegas Tapas and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

699. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an

owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

700. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

701. Upon information and belief, Vegas Tapas applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

702. Upon information and belief, an authorized representative of Vegas Tapas falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

703. In or around February 2021, an authorized representative submitted or caused to be submitted Vegas Tapas' second-draw PPP loan application to Wintrust Bank.

704. On or about February 25, 2021, in reliance on Vegas Tapas' materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 4172148503 (the "Vegas Tapas Loan 8503") to Vegas Tapas in the amount of $1,129,674.00.

705. On or about February 25, 2022, the Vegas Tapas Loan 8503 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,140,751.08.

**To Circumvent the $4 Million Cap, Wildfire Tysons Applies for and Receives a Second-Draw PPP Loan, which is Later Forgiven**

706. In or before February 2021, an authorized representative of Wildfire Tysons prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Wildfire Tysons to Wintrust Bank.

707. Upon information and belief, an authorized representative of Wildfire Tysons prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Wildfire Tysons was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that Wildfire Tysons and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

708. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.

709. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

710. Upon information and belief, Wildfire Tysons applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

711. Upon information and belief, an authorized representative of Wildfire Tysons falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

712. In or around February 2021, an authorized representative submitted or caused to be submitted Wildfire Tysons' second-draw PPP loan application to Wintrust Bank.

713. On or about February 24, 2021, in reliance on Wildfire Tysons' materially false and fraudulent representations and certifications in the loan application, Wintrust Bank issued second-draw PPP loan # 3882118505 (the "Wildfire Tysons Loan 8505") to Wildfire Tysons in the amount of $1,100,788.00.

714. On or about February 25, 2022, the Wildfire Tysons Loan 8505 was forgiven in full, causing the United States to reimburse Wintrust Bank for the full amount, which cost the Government at least $1,111,673.57.

**To Circumvent the $4 Million Cap,**
**Pizzoli Applies for and Receives**
**a Second-Draw PPP Loan, which is Later Forgiven**

715. In or before March 2021, an authorized representative of Pizzoli prepared or caused to be prepared an SBA application for second-draw PPP loan (SBA Form 2483-SD) on behalf of Pizzoli to J.P. Morgan Chase Bank.

716. Upon information and belief, an authorized representative of Pizzoli prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Pizzoli was a small business eligible for participation in the PPP Loan Program, by failing to acknowledge that

Pizzoli and the other Lettuce Entities (including Defendants) were part of the same single corporate group, and by omitting information concerning those companies' common ownership.

717. Specifically, upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information. the representative falsely and fraudulently omitted to state that the other Defendants were affiliated businesses that shared common ownership.

718. The applications required the applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

719. Upon information and belief, Pizzoli applied for a second-draw PPP loan, which exceeded the SBA's $4 million corporate group loan cap.

720. Upon information and belief, an authorized representative of Pizzoli falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

721. In In or around March 2021, an authorized representative submitted or caused to be submitted Pizzoli 's second-draw PPP loan application to J.P. Morgan Chase Bank.

722. On or about March 30, 2021, in reliance on Pizzoli's materially false and fraudulent representations and certifications in the loan application, J.P. Morgan Chase Bank issued second-draw PPP loan # 2965008704 (the "Pizzoli Loan 8704") to Pizzoli in the amount of $14,122.00.

723. On or about September 29, 2021, Pizzoli Loan 8704 was forgiven in full, causing the United States to reimburse J.P. Morgan Chase Bank for the full amount, which cost the Government at least $14,191.58.

**THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT**

724. Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $26,510,000.

## CLAIMS FOR RELIEF

### COUNT I

**False Claims Act:**
**Presenting or Causing to be Presented False and Fraudulent Claims**
**U.S.C. § 3729(a)(1)(A)**

725. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

726. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II

**False Claims Act:**
**Making or Using False**
**Records or Statement to Cause Claims to be Paid**
**31 U.S.C. § 3729(a)(1)(B)**

727. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

728. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## COUNT III

**False Claims Act: Conspiracy**
**31 U.S.C. § 3729(a)(1)(C)**

729. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

730. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants conspired with and among each other, and with others, to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A. That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B. That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $13,946.00 and up to $27,894.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C. That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D. That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E. That Relator be granted such other and further relief as the Court deems just and proper.

**TRIAL BY JURY**

Relator hereby demands a trial by jury as to all issues.

DATED: May 10, 2024

By: /s/ David J. Chizewer
David J. Chizewer
david.chizewer@goldbergkohn.com
Roger A. Lewis
roger.lewis@goldbergkohn.com
GOLDBERG KOHN LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois 60603
Telephone: (312) 201-4000

*Local Counsel for Plaintiff-Relator*

By: /s/ Eric H. Jaso

Eric H. Jaso (*pro hac vice* to be filed)
New Jersey Bar No. 476-1999
ejaso@shnlegal.com
SPIRO HARRISON & NELSON
363 Bloomfield Avenue
Suite 2C
Montclair, New Jersey 07042
Telephone: (973) 744-2100

*Primary Counsel for Plaintiff-Relator*